THE UNITED STATES DISTRICT COURT
DISTRICT OF COLORADO

Civil Action No. 1:23-cv-177

R.J., and B.J.,

    Plaintiffs,

vs.

BLUECROSS BLUESHIELD of TEXAS,

    Defendant.

# COMPLAINT

Plaintiffs R.J. and B.J., through their undersigned counsel, complain and allege against Defendant BlueCross BlueShield of Texas ("BCBSTX") as follows:

## PARTIES, JURISDICTION AND VENUE

1. R.J. and B.J. are natural persons residing in Arapahoe County, Colorado. R.J. is B.J.'s father.

2. BCBSTX is an independent licensee of the nationwide BlueCross and BlueShield network of providers and was the insurer and claims administrator, as well as the fiduciary under ERISA for the insurance plan providing coverage for the plaintiffs ("the Plan") during the treatment at issue in this case.

3. The Plan is a fully-insured employee welfare benefits plan under 29 U.S.C. §1001 *et. seq.*, the Employee Retirement Income Security Act of 1974 ("ERISA"). R.J. was a participant in the Plan and B.J. was a beneficiary of the Plan at all relevant times. R.J. and B.J. continue to be participants and beneficiaries of the Plan.

1

4. B.J. received medical care and treatment at Red Mountain Colorado ("RMC") from January 21, 2020, to August 18, 2020. RMC is a licensed treatment facility located in Colorado, which provides sub-acute inpatient treatment to adolescents with mental health, behavioral, and/or substance abuse problems.

5. BCBSTX denied claims for payment of B.J.'s medical expenses in connection with his treatment at RMC.

6. This Court has jurisdiction over this case under 29 U.S.C. §1132(e)(1) and 28 U.S.C. §1331.

7. Venue is appropriate under 29 U.S.C. §1132(e)(2) and 28 U.S.C. §1391(c) based on ERISA's nationwide service of process and venue provisions, and because BCBSTX does business in Colorado through its network of affiliates, and Plaintiffs are Colorado residents.

8. The remedies the Plaintiffs seek under the terms of ERISA and under the Plan are for the benefits due under the terms of the Plan, and pursuant to 29 U.S.C. §1132(a)(1)(B), for appropriate equitable relief under 29 U.S.C. §1132(a)(3) based on the Defendant's violation of the Mental Health Parity and Addiction Equity Act of 2008 ("MHPAEA"), an award of prejudgment interest, and an award of attorney fees and costs pursuant to 29 U.S.C. §1132(g).

## BACKGROUND FACTS

### RMC

9. B.J. was admitted to RMC on January 21, 2020, due to issues with depression, anxiety, suicidal ideation, self-harming, suicide attempts, and substance use which had not been able to be addressed at other levels of care including acute inpatient hospitalizations.

10. In a series of Explanation of Benefits statements, BCBSTX denied payment for B.J.'s treatment at RMC under the justification that:

    > This service is excluded under your Health Care Plan. Please refer to your benefit booklet for specific coverage information and exclusions under your contract.

11. On November 10, 2020, R.J. submitted an appeal of the denial of payment for B.J.'s treatment. R.J. reminded BCBSTX that he was entitled to certain rights under ERISA during the review process, including a full, fair, and thorough review conducted by appropriately qualified reviewers which took into account all of the documentation he provided, and which gave him the specific reasons for the adverse determination, referenced the specific plan provisions on which the denial was based, and which gave him a description of any information necessary to perfect the claim.

12. He also asked that the reviewer have training in MHPAEA and that they be knowledgeable concerning generally accepted standards and clinical best practices for residential programs in the State of Colorado where RMC is located. In addition, he requested a copy of any documentation related to the denials, including the reviewers' internal case notes.

13. R.J. alleged that coverage was available under the terms of the insurance policy. He wrote that residential treatment was a covered benefit under the Plan and that RMC should have been approved as it was duly licensed by the State of Colorado to provide residential treatment services. He wrote that RMC was compliant with all governing state regulations imposed by the State of Colorado and questioned why BCBSTX would deny payment for such a facility.

14. He wrote that the Plan was subject to MHPAEA which compelled insurers to ensure that coverage for any behavioral health benefits was administered at parity with coverage for

analogous medical or surgical benefits. He identified skilled nursing and inpatient hospice care as some of the medical or surgical analogues to the residential treatment services B.J. received.

15. He accused BCBSTX of violating MHPAEA by imposing non-quantitative treatment limitations on residential treatment services which were stricter than those applied to these medical or surgical analogues.

16. To demonstrate this, he quoted from the definitions section of the insurance policy which contains the following relevant language:

> **Skilled Nursing Facility** means a facility primarily engaged in providing skilled nursing services and other therapeutic services and which is:
> 1. Licensed in accordance with state law (where the state law provides for licensing of such facility); or
> 2. Medicare or Medicaid eligible as a supplier of skilled inpatient nursing care.
>
> **Hospice** means a facility or agency primarily engaged in providing skilled nursing services and other therapeutic services for terminally ill patients and which is:
> 1. Licensed in accordance with state law (where the state law provides for such licensing); or
> 2. Certified by Medicare as a supplier of Hospice Care.

17. Meanwhile, the policy defines a residential treatment center as:

> **Residential Treatment Center** means a facility setting offering a defined course of therapeutic intervention and special programming in a controlled environment which also offers a degree of security, supervision, structure and is licensed by the appropriate state and local authority to provide such service. It does not include half-way houses, wilderness programs, supervised living, group homes, boarding houses or other facilities that provide primarily a supportive environment and address long-term social needs, even if counseling is provided in such facilities. Patients are medically monitored with 24 hour medical availability and 24 hour onsite nursing service for Mental Health Care and/or for treatment of Chemical Dependency. BCBSTX requires that any facility providing Mental Health Care and/or a Chemical Dependency Treatment Center must be licensed in the state where it is located, or accredited by a national organization that is recognized by BCBSTX as set forth in its current credentialing policy, and otherwise meets all other credentialing requirements set forth in such policy.

18. The policy further states concerning residential treatment of minor children:

    **Residential Treatment Center for Children and Adolescents** means a child-care institution which is appropriately licensed and accredited by the Joint Commission on Accreditation of Healthcare Organizations or the American Association of Psychiatric Services for Children as a residential treatment center for the provisions of Mental Health Care and Serious Mental Illness services for emotionally disturbed children and adolescents.

19. R.J. pointed out that the requirements in the insurance policy were significantly stricter for residential treatment than for these medical or surgical analogues. He wrote that he was entitled to relief under MHPAEA as he had demonstrated that the Plan was subject to the statute, the Plan provided coverage for both mental health and medical/surgical care, the analogues to the mental health treatment B.J. received included skilled nursing and hospice care, and he had provided evidence of a disparity in the requirements for these services.

20. He requested that BCBSTX perform a MHPAEA compliance analysis and provide him with physical copies of the results of this analysis as well as any documentation used.

21. He asked that in the event BCBSTX upheld the denial that it provide him with a copy of all documents under which the Plan was operated, including all governing plan documents, the summary plan description, any insurance policies in place for the benefits he was seeking, any administrative service agreements that existed, any clinical guidelines or medical necessity criteria utilized in the determination, along with their medical or surgical equivalents (whether or not these were used), along with the names, qualifications, and denial rates of all individuals who reviewed the claim or were otherwise consulted about the claim (collectively the "Plan Documents").

22. BCBSTX did not respond within the timeframe allowed in the insurance contract and so R.J. filed a complaint with the Texas Department of Insurance ("TDI") on March 18, 2021 and asked that BCBSTX be compelled to respond to his appeal.

23. In a letter dated April 8, 2021, TDI stated that BCBSTX had upheld the denial and TDI was unable to further assist. The letter included BCBSTX's response to TDI.

24. This response stated that an appeal request was received on November 17, 2020, but was not initially processed. The letter stated that the appeal was at some point forwarded to the appeals department and was split into two different claims numbers. The letter also stated that BCSBTX had received a phone call from a representative acting on R.J.'s behalf, but it had not yet reviewed it. The letter stated that the call would be reviewed and "we will share any coaching opportunities with the appropriate levels of management."

25. The letter does not appear to actually address any of the allegations raised in the appeals process beyond attaching the denial letters and stating that "[t]he appeal review was based on a non-clinical denial, therefore the appeal rights are now exhausted."

26. As stated in its response to TDI, BCBSTX split the appeal into two claims and issued two separate denial letters. In the first of these, dated March 29, 2021, BCBSTX again upheld the denial payment for B.J.'s treatment. The letter stated that it was issued for "home health service" between February 1, 2020, and August 18, 2020. The letter attributed the decision to an appeals specialist who was not involved in the prior denial and stated in pertinent part:

> This is an appeal request by the member's authorized representative for reconsideration of inpatient treatment received February 01, 2020-August 18, 2020 from Red Mountain Colorado LLC. After review of the appeal request, claims, and the member's benefit booklet, it has been determined no benefits are available, as the facility does not meet the definition of a Residential Treatment Center outlined by the member's contract. The facility does not meet the

6

> definition of a residential treatment[sic] with confirmation of 24-hour nursing presence and M.D. access.

27. The letter then quoted the definition of a residential treatment center in the insurance policy along with an exclusion for:

    > Behavioral health services provided at behavioral modification facilities, boot camps, emotional group academies, military schools, therapeutic boarding schools, wilderness programs, halfway houses, and group homes, except for Covered Services provided by appropriate Providers as described in this Benefit Booklet.

28. The second denial letter was dated April 1, 2021, and denied payment for acute inpatient treatment at RMC on January 21, 2020, and March 1, 2020. The denial rationale was otherwise essentially identical to the March 29, 2021, letter quoted above.

29. The Plaintiffs exhausted their pre-litigation appeal obligations under the terms of the Plan and ERISA.

30. The denial of benefits for B.J.'s treatment was a breach of contract and caused R.J. to incur medical expenses that should have been paid by the Plan in an amount totaling over $95,000.

31. BCBSTX failed to produce a copy of the Plan Documents including any medical necessity criteria for mental health and substance use disorder treatment and for skilled nursing or rehabilitation facilities despite R.J.'s request.

## FIRST CAUSE OF ACTION

### (Claim for Recovery of Benefits Under 29 U.S.C. §1132(a)(1)(B))

32. ERISA imposes higher-than-marketplace quality standards on insurers and plan administrators. It sets forth a special standard of care upon plan fiduciaries such as BCBSTX, acting as agent of the Plan, to discharge its duties in respect to claims processing solely in the interests of the participants and beneficiaries of the Plan. 29

7

U.S.C. §1104(a)(1).

33. BCBSTX and the Plan failed to provide coverage for B.J.'s treatment in violation of the express terms of the Plan, which promise benefits to employees and their dependents for medically necessary treatment of mental health and substance use disorders.

34. ERISA also underscores the particular importance of accurate claims processing and evaluation by requiring that administrators provide a "full and fair review" of claim denials and to engage in a meaningful dialogue with the Plaintiffs in the pre-litigation appeal process. 29 U.S.C. §1133(2).

35. The denial letters produced by BCBSTX do little to elucidate whether BCBSTX conducted a meaningful analysis of the Plaintiffs' appeals or whether it provided them with the "full and fair review" to which they are entitled. BCBSTX failed to substantively respond to the issues presented in R.J.'s appeals and did not meaningfully address the arguments or concerns that the Plaintiffs raised during the appeals process.

36. BCBSTX and the agents of the Plan breached their fiduciary duties to B.J. when they failed to comply with their obligations under 29 U.S.C. §1104 and 29 U.S.C. §1133 to act solely in B.J.'s interest and for the exclusive purpose of providing benefits to ERISA participants and beneficiaries, to produce copies of relevant documents and information to claimants upon request, and to provide a full and fair review of B.J.'s claims.

37. The actions of BCBSTX and the Plan in failing to provide coverage for B.J.'s medically necessary treatment are a violation of the terms of the Plan and its medical necessity criteria.

38. While the presentation of alternative or potentially inconsistent claims in the manner that Plaintiffs state in their first and second causes of action is specifically anticipated and

allowed under F.R.Civ.P. 8, Plaintiffs contend they are entitled to relief and appropriate remedies under both causes of action.

## SECOND CAUSE OF ACTION

### (Claim for Violation of MHPAEA Under 29 U.S.C. §1132(a)(3))

39. MHPAEA is incorporated into ERISA and is enforceable by ERISA participants and beneficiaries as a requirement of both ERISA and MHPAEA. The obligation to comply with both ERISA and MHPAEA is part of BCBSTX's fiduciary duties.

40. Generally speaking, MHPAEA requires ERISA plans to provide no less generous coverage for treatment of mental health and substance use disorders than they provide for treatment of medical/surgical disorders.

41. MHPAEA prohibits ERISA plans from imposing treatment limitations on mental health or substance use disorder benefits that are more restrictive than the predominant treatment limitations applied to substantially all medical and surgical benefits and also makes illegal separate treatment limitations that are applicable only with respect to mental health or substance use disorder benefits. 29 U.S.C.§1185a(a)(3)(A)(ii).

42. Impermissible nonquantitative treatment limitations under MHPAEA include, but are not limited to, medical management standards limiting or excluding benefits based on medical necessity; refusal to pay for higher-cost treatment until it can be shown that a lower-cost treatment is not effective; and restrictions based on geographic location, facility type, provider specialty, or other criteria that limit the scope or duration of benefits for mental health or substance use disorder treatment. 29 C.F.R. §2590.712(c)(4)(ii)(A), (F), and (H).

43. The facility eligibility criteria used by BCBSTX for the intermediate level mental health treatment benefits at issue in this case are more stringent or restrictive than the facility eligibility criteria the Plan applies to analogous intermediate levels of medical or surgical benefits.

44. Comparable benefits offered by the Plan for medical/surgical treatment analogous to the benefits the Plan excluded for B.J.'s treatment include sub-acute inpatient treatment settings such as skilled nursing facilities, inpatient hospice care, and rehabilitation facilities.

45. When BCBSTX and the Plan receive claims for intermediate level treatment of medical and surgical conditions, they provide benefits and pay the claims as outlined in the terms of the Plan based on generally accepted standards of medical practice.

46. BCBSTX and the Plan evaluated B.J.'s mental health claims using facility eligibility criteria that deviate from generally accepted standards of medical practice. This process resulted in a disparity because the Plan denied coverage for mental health benefits when the analogous levels of medical or surgical benefits would have been paid.

47. As an example of disparate application of facility eligibility criteria between medical/surgical and mental health treatment, BCBSTX's requirements for residential treatment care are more numerous and more intensive than the same requirements for analogous medical or surgical care.

48. Another example is that the residential treatment definition in the insurance policy includes a list of excluded program types like wilderness care or halfway houses "even if counseling is provided in these facilities" while skilled nursing and hospice care have no similar exclusions.

49. In addition, licensure is required for all residential treatment services, while it is only required "where the state law provides" for analogous medical or surgical care.

50. RMC is a licensed treatment facility and provides treatment in a manner that complies with generally accepted standards of medical practice.

51. Generally accepted standards of medical practice are largely codified and enforced by the appropriate licensing, regulatory, and accreditation entities. In the case of residential treatment for mental health and substance use disorders, no licensing, regulatory, or accreditation entities require 24-hour onsite nursing services as part of generally accepted standards of care.

52. Through its imposition of requirements which are stricter than those dictated by generally accepted standards of care as reflected in the licensing, regulatory, and accreditation entity requirements, BCBSTX violates MHPAEA.

53. BCBSTX violates MHPAEA because it relies on generally accepted standards of care and the standards of licensing, regulatory, and accreditation entities to develop its medical necessity guidelines for intermediate level medical or surgical facilities but holds residential treatment to a stricter standard beyond what is advised and considered appropriate by these relevant licensing, regulatory, and accreditation entities.

54. A parity violation can occur in this manner even when the terms at issue are facially neutral, such as when the plan documents require 24/7 onsite nursing care for both sub-acute inpatient mental health and medical/surgical facilities.

55. The MHPAEA violation occurs because 24/7 onsite nursing care is often part of generally accepted standards of care for intermediate level inpatient medical and surgical

treatment but does not fall within generally accepted standards of care and is neither expected nor required for residential treatment facilities.

56. In this manner, the effect of imposing even a facially neutral 24/7 onsite nursing requirement on residential treatment centers as well as on analogous level of care inpatient treatment facilities for medical and surgical care is to significantly limit access to coverage for intermediate level mental health and substance use disorder treatment compared to coverage for intermediate level medical and surgical treatment in a way that violates MHPAEA.

57. BCBSTX's policies place its insureds in a financially disadvantaged position of either delaying treatment until an appropriate facility is found (if any such facility even exists) and placing their child's wellbeing in serious jeopardy, or putting their child in the treatment environment they require but running the risk that BCBSTX will not pay due to an absence of 24-hour onsite nursing.

58. Despite the differences in generally accepted standards of care between mental health and substance use disorder treatment facilities and skilled nursing and inpatient rehabilitation facilities, by requiring 24-hour onsite nurses for all intermediate inpatient treatment, BCBSTX effectually excludes coverage for all or nearly all residential treatment facilities while giving the appearance to its insureds that residential treatment is a covered benefit.

59. Plaintiffs do not dispute that all (or nearly all) skilled nursing facilities provide 24-hour onsite nursing. The MHPAEA violation in this case rests on the fact that while it may be within generally accepted standards of medical practice for skilled nursing facilities to provide 24/7 onsite nursing, it is not true the it is within generally accepted standards of care for residential treatment centers to provide 24/7 onsite nursing. Requiring residential

treatment centers to provide 24/7 onsite nursing creates disparate treatment limitations that violate MHPAEA.

60. In this manner, the Defendant violates 29 C.F.R. §2590.712(c)(4)(i) because the terms of the Plan and the medical necessity criteria utilized by the Plan and BCBSTX, as written or in operation, use processes, strategies, standards, or other factors to limit coverage for mental health or substance use disorder treatment in a way that is inconsistent with, and more stringently applied, than the processes, strategies, standards or other factors used to limit coverage for medical/surgical treatment in the same classification.

61. BCBSTX and the Plan did not produce the documents the Plaintiffs requested to evaluate compliance with MHPAEA nor did they address in any substantive capacity the Plaintiffs' allegations that BCBSTX and the Plan were not in compliance with MHPAEA.

62. In fact, despite R.J.'s request that BCBSTX and the Plan conduct a parity compliance analysis and despite the direction from the Department of Labor that ERISA plan and claim administrators perform parity compliance analyses, BCBSTX and the Plan have not provided R.J. with any information about whether they have carried out any parity compliance analysis and, to the extent that any such analysis was performed, BCBSTX and the Plan have not provided R.J. with any information about the results of this analysis.

63. The violations of MHPAEA by BCBSTX and the Plan are breaches of fiduciary duty and also give the Plaintiffs the right to obtain appropriate equitable remedies as provided under 29 U.S.C. §1132(a)(3) including, but not limited to:

(a) A declaration that the actions of the Defendant violate MHPAEA;

    (b) An injunction ordering the Defendant to cease violating MHPAEA and requiring compliance with the statute;

    (c) An order requiring the reformation of the terms of the Plan and the medical necessity criteria utilized by the Defendant to interpret and apply the terms of the Plan to ensure compliance with MHPAEA;

    (d) An order requiring disgorgement of funds obtained by or retained by the Defendant as a result of their violations of MHPAEA;

    (e) An order requiring an accounting by the Defendant of the funds wrongly withheld from participants and beneficiaries of the Plan as a result of the Defendant's violations of MHPAEA;

    (f) An order based on the equitable remedy of surcharge requiring the Defendant to provide payment to the Plaintiffs as make-whole relief for their loss;

    (g) An order equitably estopping the Defendant from denying the Plaintiffs' claims in violation of MHPAEA; and

    (h) An order providing restitution from the Defendant to the Plaintiffs for their loss arising out of the Defendant's violation of MHPAEA.

64. In addition, Plaintiffs are entitled to an award of prejudgment interest pursuant to U.C.A. §15-1-1, and attorney fees and costs pursuant to 29 U.S.C. §1132(g)

WHEREFORE, the Plaintiffs seek relief as follows:

1. Judgment in the total amount that is owed for B.J.'s treatment at RMC under the terms of the Plan, plus pre and post-judgment interest to the date of payment;

2. Appropriate equitable relief under 29 U.S.C. §1132(a)(3) as outlined in Plaintiffs' Second Cause of Action;

3. Attorney fees and costs incurred pursuant to 29 U.S.C. §1132(g); and

4. For such further relief as the Court deems just and proper.

DATED this 20th day of January, 2023.

By    s/ Brian S. King
Brian S. King, #4610 (UT)
Tera J. Peterson, #33500 (CO)
**BRIAN S. KING, P.C.**
420 East South Temple, Suite 420
Salt Lake City, UT 84111
Telephone: (801) 532-1739
Facsimile: (801) 532-1936
brian@briansking.com

Attorneys for Plaintiffs

County of Plaintiffs' Residence:
Arapahoe County, Colorado