IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO
**Chief Judge Philip A. Brimmer**

Civil Action No. 23-cv-00177-PAB-STV

R.J. and B.J.,

      Plaintiffs,

v.

BLUECROSS BLUESHIELD OF TEXAS,

      Defendant.

_____

## ORDER

_____

      This matter is before the Court on Defendant BlueCross BlueShield of Texas's Motion to Dismiss [Docket No. 19].   Plaintiffs filed a response, Docket No. 24, and defendant filed a reply.   Docket No. 25.   Defendant filed a notice of supplemental authority, Docket No. 32, to which plaintiffs responded.   Docket No. 33.   The Court has subject matter jurisdiction under 28 U.S.C. § 1331 and 29 U.S.C. § 1132(e).

## I.  BACKGROUND

      This lawsuit stems from a denial of medical benefits.[1]   Defendant BlueCross BlueShield of Texas ("BlueCross") is the insurer, claims administrator, and fiduciary for the employer-sponsored health plan (the "Plan") in which plaintiff R.J. is a participant. Docket No. 1 at 1, ¶¶ 2–3.   R.J.'s minor son, plaintiff B.J., is a beneficiary under the Plan.   *Id*. at 1-2, ¶¶ 3–4.   The Plan is governed by the Employee Retirement Income

_____

[1] The following facts are drawn from the complaint, Docket No. 1, and assumed to be true unless otherwise noted.

Security Act of 1974 ("ERISA"), as amended, 29 U.S.C. § 1001–1461.   *Id*. at 1, ¶ 3.

B.J. has a medical history of issues with depression, anxiety, suicidal ideation, self-harming, suicide attempts, and substance use.   *Id*. at 2, ¶ 9.   On January 21, 2020, in relation to these issues, B.J. was admitted to Red Mountain Colorado ("Red Mountain").   *Id*.   Red Mountain is a licensed residential treatment facility in Colorado that provides sub-acute inpatient treatment to adolescents with mental health, behavioral, or substance abuse problems.   *Id*., ¶ 4.   B.J. was treated at Red Mountain through August 18, 2020.   *Id*.

BlueCross denied payment for B.J.'s treatment at Red Mountain.   *Id*. at 3, ¶ 10. In an Explanation of Benefits, BlueCross stated that the treatment was excluded under the Plan.   *Id*.   R.J. appealed this decision on behalf of his son, requesting an explanation of the denial and related documents, such as criteria for mental health and substance use disorder treatment and criteria for rehabilitation or skilled nursing facilities.   *Id*. at 3, 7, ¶¶ 11–12, 31.   R.J. also raised two of the same issues that plaintiffs now raise before the Court through their claims.   *Id*. at 3-4, ¶¶ 13–14.

First, R.J. argued that treatment at residential facilities, such as Red Mountain, is a covered benefit under the Plan and that B.J.'s treatment there should have been approved.   *Id*. at 3, ¶ 13.   In explaining its coverage, the Plan defines a "Residential Treatment Center" as:

> a facility setting offering a defined course of therapeutic intervention and special programming in a controlled environment which also offers a degree of security, supervision, structure and is licensed by the appropriate state and local authority to provide such service.   It does not include half-way houses, wilderness programs, supervised living, group homes, boarding houses or other facilities that provide primarily a supportive environment and address long-term social needs, even if counseling is provided in such facilities.   **Patients are medically**

2

**monitored with 24 hour medical availability and 24 hour onsite nursing service for Mental Health Care and/or for treatment of Chemical Dependency.**   [BlueCross] requires that any facility providing Mental Health Care and/or a Chemical Dependency Treatment Center must be licensed in the state where it is located, or accredited by a national organization that is recognized by [BlueCross] as set forth in its current credentialing policy, and otherwise meets all other credentialing requirements set forth in such policy.

*Id*. at 4, ¶ 17 (emphasis added).[2]

Second, R.J. argued that BlueCross violated the Mental Health Parity and Addiction Equity Act of 2008 ("Parity Act"), 29 U.S.C. § 1185a, by imposing or applying stricter limits on claims for mental healthcare than it applies for medical analogues.   *Id*., ¶ 15.   The Parity Act is an amendment to ERISA that Congress enacted to "end discrimination in the provision of insurance coverage for mental health and substance use disorders as compared to coverage for medical and surgical conditions in employer-sponsored group health plans."   *Am. Psychiatric Ass'n v. Anthem Health Plans, Inc.*, 821 F.3d 352, 356 (2d Cir. 2016).   As relevant here, the Parity Act requires that the "treatment limitations applicable to such mental health or substance use disorder benefits are no more restrictive than the predominant treatment limitations applied to substantially all medical and surgical benefits covered by the plan (or coverage) and

---

[2] The Plan defines "Residential Treatment Center for Children and Adolescents" as:

a childcare institution which is appropriately licensed and accredited by the Joint Commission on Accreditation of Healthcare Organizations or the American Association of Psychiatric Services for Children as a residential treatment center for the provisions of Mental Health Care and Serious Mental Illness services for emotionally disturbed children and adolescents.

Docket No. 1 at 5, ¶ 18.

there are no separate treatment limitations that are applicable only with respect to mental health or substance use disorder benefits." 29 U.S.C. § 1185a(a)(3)(A)(ii). R.J. argued that the limitations that the Plan placed on residential treatment facilities for mental health care were stricter than the limitations for residential medical and surgical analogues of a skilled nursing facility, inpatient hospice care,[3] and rehabilitation facilities. Docket No. 1 at 3-4, 10, ¶¶ 14, 44.

BlueCross failed to timely respond to plaintiffs' appeal, and R.J. filed a complaint with the Texas Department of Insurance requesting that BlueCross be compelled to respond. *Id*. at 6, ¶ 22. BlueCross responded by splitting the appeal into two claims and issuing two separate denial letters that provided essentially identical rationales for denying plaintiffs' claim. *Id*. at 6-7, ¶¶ 24–28. BlueCross stated that "no benefits are available, as the facility does not meet the definition of a Residential Treatment Center

---

[3] These services are defined by the Plan, respectively, as:

> **Skilled Nursing Facility** means a facility primarily engaged in providing skilled nursing services and other therapeutic services and which is:
> 1. Licensed in accordance with state law (where the state law provides for licensing of such facility); or
> 2. Medicare or Medicaid eligible as a supplier of skilled inpatient nursing care.
>
> **Hospice** means a facility or agency primarily engaged in providing skilled nursing services and other therapeutic services for terminally ill patients and which is:
> 1. Licensed in accordance with state law (where the state law provides for such licensing); or
> 2. Certified by Medicare as a supplier of Hospice Care.

Docket No. 1 at 4, ¶ 16.

outlined by" the Plan because it did not have "24-hour nursing presence and M.D. access." *Id*., ¶ 26.   BlueCross did not provide the Plan documents that B.J. requested. *Id*. at 7, ¶ 31.

After exhausting the Plan's appeals process, plaintiffs filed a complaint with this Court.   *Id*., ¶ 29.   BlueCross moves to dismiss the complaint in its entirety pursuant to Federal Rule of Civil Procedure 12(b)(6) for failure to state a claim.   Docket No. 19 at 1.

## II.   LEGAL STANDARDS

"To survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)).   Plausibility, in the context of a motion to dismiss, means that the plaintiff pled facts which allow "the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id*.   *Twombly* requires a two-prong analysis.   First, a court must identify "the allegations in the complaint that are not entitled to the assumption of truth," that is, those allegations that are legal conclusions, bare assertions, or merely conclusory.   *Id*. at 680.   Second, the Court must consider the factual allegations "to determine if they plausibly suggest an entitlement to relief." *Id*. at 681.   If the allegations state a plausible claim for relief, such claim survives the motion to dismiss.   *Id*. at 679.

Plausibility refers "to the scope of the allegations in a complaint: if they are so general that they encompass a wide swath of conduct, much of it innocent, then the plaintiffs have not nudged their claims across the line from conceivable to plausible." *SEC v. Shields*, 744 F.3d 633, 640 (10th Cir. 2014) (quoting *Khalik v. United Air Lines*,

671 F.3d 1188, 1191 (10th Cir. 2012)).    "The nature and specificity of the allegations

required to state a plausible claim will vary based on context."    *Safe Streets All. v.*

*Hickenlooper*, 859 F.3d 865, 878 (10th Cir. 2017) (quoting *Kan. Penn Gaming, LLC v.*

*Collins*, 656 F.3d 1210, 1215 (10th Cir. 2011)).    Thus, while the Rule 12(b)(6) standard

does not require that a plaintiff establish a *prima facie* case in a complaint, the elements

of each alleged cause of action may help to determine whether the plaintiff has set forth

a plausible claim.    *Khalik*, 671 F.3d at 1191.

However, "[t]hreadbare recitals of the elements of a cause of action, supported

by mere conclusory statements, do not suffice."    *Iqbal*, 556 U.S. at 678.    The complaint

must provide "more than labels and conclusions" or merely "a formulaic recitation of the

elements of a cause of action," so that "courts 'are not bound to accept as true a legal

conclusion couched as a factual allegation.'"    *Twombly*, 550 U.S. at 555 (quoting

*Papasan v. Allain*, 478 U.S. 265, 286 (1986)).    "Determining whether a complaint states

a plausible claim for relief will . . . be a context-specific task that requires the reviewing

court to draw on its judicial experience and common sense."    *Iqbal*, 556 U.S. at 679.

"[W]here the well-pleaded facts do not permit the court to infer more than the mere

possibility of misconduct," the complaint has made an allegation, "but it has not shown

that the pleader is entitled to relief."    *Id*. (quotation marks, alternations, and citation

omitted).

## III.    ANALYSIS

Plaintiffs bring two claims.    First, under ERISA, plaintiffs claim that BlueCross

improperly failed to pay benefits, failed to provide a full and fair review of their claims,

and violated its fiduciary duties to them as beneficiaries.    Docket No. 1 at 7-9, ¶¶ 32–

38.   Second, under the Parity Act, plaintiffs claim that the benefits eligibility criteria contained in the Plan and applied by BlueCross contain prohibited limitations on mental health treatment that are more restrictive than those on medical and surgical benefits. *Id*. at 9-14, ¶¶ 39–63.

BlueCross argues that plaintiffs' ERISA claim must be dismissed because the Plan's definition of residential treatment center requires that covered facilities include 24-hour onsite nursing.   Docket No. 19 at 4-5.   Regarding plaintiffs' claim under Parity Act that the Plan includes more restrictive limitations on mental health treatment, BlueCross argues that the limitations placed on residential treatment facilities are comparable to those it places on skilled nursing facilities.   *Id*. at 9-10.

### A.  First Claim – Recovery of Benefits Under 29 U.S.C. § 1132(a)(1)(B)

Plaintiffs' first cause of action is made under ERISA and seeks to recover benefits under the Plan for treatment at Red Mountain.   Docket No. 1 at 7-9, ¶¶ 32-38. ERISA allows a "participant or beneficiary" to bring a civil action "to recover benefits due to him under the terms of his plan, to enforce his rights under the terms of the plan, or to clarify his rights to future benefits under the terms of the plan."   29 U.S.C. § 1132(a)(1)(B).   Consistent with this statutory language, relief is available under this provision only for benefits available "under the terms of the plan."   *Id*.; *J.W. v. Bluecross Blueshield of Texas*, 2022 WL 2905657, at *2 (D. Utah July 22, 2022) (citing *IHC Health Serv., Inc. v. Cent. States, Se. & Sw. Areas Health & Welfare Fund*, 2018 WL 3756959, at *3 (D. Utah Aug. 8, 2018)).

BlueCross argues that plaintiffs' ERISA claim must be dismissed because the Plan's definition of residential treatment center requires that covered facilities include

7

24-hour onsite nursing.   Docket No. 19 at 4-5.   Because Red Mountain does not meet this requirement, BlueCross argues that plaintiffs' claim for benefits fails.   *Id*. at 5-7. BlueCross argues that, due to this lack of coverage under the terms of the Plan, the benefits claim fails even if plaintiffs were not given a full and fair review as required by ERISA.   *Id*. at 7-8.   In other words, BlueCross argues that, even if plaintiffs have identified procedural errors based on BlueCross's review of the claim or its failure to provide Plan documents, plaintiffs' claim nonetheless fails as a matter of law because there is no coverage under the Plan.   *Id*. at 7 (citing *Brimer v. Life Ins. Co. of N. Am.*, 462 F. App'x 804, 808-10 (10th Cir. 2012) (unpublished)).

Plaintiffs respond that their ERISA claim is properly pled because it includes allegations that the Plan provides coverage for medically necessary treatment, that the treatment at Red Mountain was medically necessary, and that failing to provide coverage violated the express terms of the Plan.   Docket No. 24 at 10-11.   Plaintiffs also argue that their ERISA claim incorporates allegations that the requirement of 24-hour onsite nursing violates the Parity Act and cannot be used to deny coverage.   *Id*. at 11 (citing *Danny P. v. Cath. Health Initiatives*, 891 F.3d 1155, 1158 (9th Cir. 2018)).   In addition, plaintiffs note that their claims include allegations that BlueCross did not provide a full and fair review of their claim, including reviewing their arguments under the Parity Act, and that BlueCross failed to provide requested documents, including the Plan documents themselves.   *Id*.   Plaintiffs do not, however, argue that their assertions of improper review or failure to provide documentation can be sustained separately from a claim for benefits under the Plan.   *See id*. at 13-14.

BlueCross replies that plaintiffs' ERISA claim must nonetheless be dismissed

8

because the explicit terms of the Plan prohibit benefits for plaintiffs' treatment.    Docket No. 25 at 2-3.[4]

BlueCross attaches an exhibit that it identifies as the Plan to its motion, which the Court will consider.    Docket No. 19-1.    This exhibit is authenticated as the Plan that applied to plaintiffs' coverage during the relevant period.    *Id*. at 3, ¶ 5.    Moreover, plaintiffs do not contest that the exhibit is the Plan identified in their complaint or dispute its authenticity and accuracy.    *See* Docket No. 24.    Further, in all relevant portions, the exhibit's text matches the text of the Plan as alleged in the complaint.    *Compare, e.g.*, Docket No. 1 at 4, ¶ 17, *with* Docket No. 19-1 at 91.    "Ordinarily, consideration of material attached to a defendant's answer or motion to dismiss requires the court to convert the motion into one for summary judgment and afford the parties notice and an opportunity to present relevant evidence."    *Tal v. Hogan*, 453 F.3d 1244, 1265 n.24 (10th Cir. 2006) (citing Fed. R. Civ. P. 12(b); *David v. City & Cnty. of Denver*, 101 F.3d 1344, 1352 (10th Cir. 1996)).    Courts may, however, consider "documents referred to in the complaint if the documents are central to the plaintiff's claim and the parties do not dispute the documents' authenticity" without converting the motion to one for summary judgment.    *Jacobsen v. Deseret Book Co.*, 287 F.3d 936, 941 (10th Cir. 2002).[5] Because the Plan is referred to in the complaint, is central to plaintiffs' claim, and the

---

[4]  BlueCross argues for the first time in its reply that plaintiffs' claims are duplicative. Docket No. 25 at 5.   The Court does not consider arguments raised for the first time in reply.   *See Gutierrez v. Cobos*, 841 F.3d 895, 902 (10th Cir. 2016) ("a party waives issues and arguments raised for the first time in a reply brief."   (quoting *Reedy v. Werholtz*, 660 F.3d 1270, 1274 (10th Cir. 2011)).

[5]  In these circumstances, "documents may only be considered to show their contents, not to prove the truth of matters asserted therein."   *Oxford Asset Mgmt., Ltd. v. Jaharis*, 297 F.3d 1182, 1188 (11th Cir. 2002).

parties do not dispute the authenticity of the exhibit identified as the Plan, the Court will consider it.

The Plan specifies the coverage it provides for "many of [participants'] health care expenses for Medically Necessary services and supplies."   Docket No. 19-1 at 18. It further makes clear that various services are not covered under the Plan even if those services may be medically necessary, including "[a]ny services or supplies not specifically defined as Eligible Expenses in this Plan."   *Id*. at 75, ¶ 45.   As plaintiffs allege, the Plan contains the 24-hour onsite nursing requirement in its definition of a residential treatment center.   *Id*. at 91; Docket No. 1 at 4, ¶ 17.   Plaintiffs allege that their benefits claim was denied based on this limitation on coverage.   Docket No. 1 at 6, ¶ 26.   Plaintiffs also allege in relevant part that:

> [BlueCross] and the Plan failed to provide coverage for B.J.'s treatment in violation of the express terms of the Plan, which promise benefits to employees and their dependents for medically necessary treatment of mental health and substance use disorders.
>
> . . .
>
> The actions of [BlueCross] and the Plan in failing to provide coverage for B.J.'s medically necessary treatment are a violation of the terms of the Plan and its medical necessity criteria.

*Id*., ¶¶ 33, 37.   Although plaintiffs argue that their ERISA claim includes an assertion that the 24-hour onsite nursing requirement violates the Parity Act and cannot be used to deny coverage, the complaint contains no such allegations in relation to plaintiffs' ERISA claim.   Docket No. 24 at 11 (citing Docket No. 1 at 11-12, ¶¶ 52–56 (a portion of the Parity Act claim)).[6]   Rather, plaintiffs' ERISA claim is, and must be, founded on

---

[6] Even had plaintiffs included such an allegation, it would not change the outcome.   For

allegations that the denial of coverage violates the express terms of the Plan.   Docket No. 1 at 8, ¶ 33; 29 U.S.C. § 1132(a)(1)(B).

Accepting the factual allegations in the complaint as true and viewing them in the light most favorable to plaintiffs, the Court concludes that plaintiffs have failed to raise a reasonable inference that B.J.'s treatment was covered under the Plan.   Although plaintiffs allege a standard applied by the Plan (namely, medical necessity) and that the treatment met that standard, plaintiffs' allegations and the Plan document show that meeting this standard does not necessarily entitle them to benefits.   Docket No. 1 at 8, ¶¶ 33, 37.   Instead, as plaintiffs allege, the Plan defines covered residential treatment facilities as those with 24-hour onsite nursing.   *Id*. at 4, ¶ 17.   Plaintiffs further allege that they were denied benefits based on this limitation.   *Id*. at 6, ¶ 26.   There are no allegations in the complaint that Red Mountain met the Plan's definition for covered residential treatment facilities by having 24-hour onsite nursing care.   Rather, plaintiffs merely allege that Red Mountain is a "licensed treatment facility and provides treatment in a manner that complies with generally accepted standards of medical practice."   *Id*. at 11, ¶ 50.   While these facts are necessary for coverage under the terms of the Plan, they are not sufficient to show that B.J.'s treatment was covered "under the terms of the plan."   29 U.S.C. § 1132(a)(1)(B).

Because plaintiffs have failed to plausibly assert that they were entitled to benefits under the Plan, their allegations that BlueCross did not provide a full and fair review of their claim or provide requested documents also fail to state a claim on which

———————————————————

the reasons explained below, plaintiffs' Parity Act claim also fails.

relief can be granted.   29 U.S.C. § 1132(a)(1)(B); *J.W.*, 2022 WL 2905657, at *2.

Accordingly, the Court will dismiss plaintiffs' first claim.   The Court now turns to whether

plaintiffs have stated a viable claim that BlueCross has violated the Parity Act.

### B.   Second Claim – Violation of the Parity Act Under 29 U.S.C. § 1132(a)(3)

Plaintiffs' second claim seeks to enjoin or otherwise prevent BlueCross from

relying on the provision in the Plan requiring 24-hour onsite nursing on the basis that it

violates the Parity Act.   Docket No. 1 at 9-14, ¶¶ 39-63.   ERISA allows a "participant,

beneficiary, or fiduciary (A) to enjoin any act or practice which violates any provision of

this subchapter or the terms of the plan, or (B) to obtain other appropriate equitable

relief" based on a violation or plan provision.   29 U.S.C. § 1132(a)(3).

In order to state a claim under Parity Act, plaintiffs must:

(1) [p]lausibly allege that the relevant group health plan is subject to [the
Parity Act];

(2) identify a specific treatment limitation on mental health or substance-
use disorder benefits covered by the plan;

(3) identify medical or surgical care covered by the plan that is analogous
to the mental health or substance-use disorder care for which the plaintiffs
seek benefits; and

(4) plausibly allege a disparity between the treatment limitation on mental
health or substance-use disorder benefits as compared to the limitations
that defendants would apply to the medical or surgical analog.

*E.W. v. Health Net Life Ins. Co.*, 86 F.4th 1265, 1283 (10th Cir. 2023).[7]

---

[7] The Tenth Circuit's opinion does not indicate that the court adopted this test for all
purposes, stating that, "at oral argument, the parties agreed we may apply a similar
standard that combines elements from both tests applied in the district courts" resulting
in this standard.   *E.W.*, 86 F.4th at 1282-83.   Nonetheless, the Court finds it
appropriate to apply the same standard here because the Tenth Circuit explained the
source of the elements in underlying law, regulations, and caselaw and discussed how

BlueCross argues that plaintiffs' Parity Act claim should be dismissed because there is no disparity between the Plan's treatment of residential treatment facilities and skilled nursing facilities.   Docket No. 19 at 9-10.   Under the Plan, both residential treatment facilities and skilled nursing facilities are required to have 24-hour onsite nursing services.   *Id*.   BlueCross further argues that, even if its requirements for residential treatment facilities are more restrictive than the generally accepted standards of care, it has not violated the Parity Act so long as the same requirements apply to skilled nursing facilities.   *Id*. at 10-14.   In BlueCross's view, because the Plan effectively imposes the same 24-hour onsite nursing requirement on skilled nursing facilities as on residential treatment facilities, plaintiffs have not identified a disparity in benefits for analogous medical and mental health treatment.   *Id*. at 9.

Plaintiffs respond that, because of the statute's breadth, there are "many ways a Plan or insurer can violate [the Parity Act], and many ways that a plaintiff can make out a claim for a [Parity Act] violation."   Docket No. 24 at 4.   Plaintiffs argue that they have alleged a plausible claim that the standards applied in evaluating their mental health claim were more restrictive insofar as those standards diverge from the generally accepted standards of care where, in contrast, the standards applied to analogous medical claims do not diverge from the related generally accepted standards of care. *Id*. at 5.

Applying the Tenth Circuit's test from *E.W.*, the Court finds that plaintiffs have failed to state a claim.   The first element is straightforward.   Plaintiffs allege, and

---

they are to be applied.   *Id*. at 1283-85

BlueCross does not dispute, that the Plan is subject to the Parity Act, thereby satisfying the first element.   Docket No. 1 at 1, 3-4, 9, ¶¶ 2–3, 14, 39; 29 U.S.C. § 1191b(a)(1) (defining "group health plan" for the purposes of ERISA and the Parity Act).

Under the second element, "plaintiffs must identify a 'treatment limitation' that satisfies the statutory definition and applies to mental health or substance use disorder benefits." *E.W.*, 86 F.4th at 1283.   The statutory definition of treatment limitation "includes limits on the frequency of treatment, number of visits, days of coverage, or other similar limits on the scope or duration of treatment." *Id*. at 1281 (quoting 29 U.S.C. § 1185a(a)(3)(B)(iii)).   The implementing regulations further provide that treatment limitations "include both quantitative treatment limitations, which are expressed numerically (such as 50 outpatient visits per year), and nonquantitative treatment limitations, which otherwise limit the scope or duration of benefits for treatment under a plan or coverage." 29 C.F.R. § 2590.712(a).

Regarding the second element, plaintiffs specifically identify the 24-hour onsite nursing services requirement for residential treatment centers as a limitation on mental health treatment.   *See* Docket No. 1 at 12, ¶ 58 ("[B]y requiring 24-hour onsite nurses for all intermediate inpatient treatment, [BlueCross] effactually excludes coverage for all or nearly all residential treatment facilities while giving the appearance to its insureds that residential treatment is a covered benefit.").[8]   BlueCross agrees that the 24-hour onsite nursing requirement applies to mental health care at residential treatment centers

---

[8] Plaintiffs also identify other limitations on mental health treatment in the Plan, such as exclusion of "wilderness care or halfway houses" and requirement of licensure.   Docket No. 1 at 10-11, ¶¶ 48-49.   These are alleged as exemplary and do not appear to form a basis for the alleged violation of the Parity Act in this case.

through the Plan's definition of "Residential Treatment Center."    Docket No. 19 at 2-4.
Thus, plaintiffs have identified an express limitation on mental health treatment found in
the Plan to satisfy the second element.

"The third element captures the comparison [the Parity Act] requires between the
treatment limitations applied to benefits for medical or surgical care and those applied to
benefits for care addressing mental health or substance-use disorders."    *E.W.*, 86 F.4th
at 1283.    This "requires a comparison between forms of treatment that are analogous."
*Id*. at 1284.    Step three is satisfied through plaintiffs' identification of multiple types of
medical care covered by the Plan along with allegations that such care is analogous to
the residential treatment center care at issue.    Plaintiffs allege that "benefits offered by
the Plan for medical/surgical treatment analogous to the benefits the Plan excluded for
B.J.'s treatment include sub-acute inpatient treatment settings such as skilled nursing
facilities, inpatient hospice care, and rehabilitation facilities."    Docket No. 1 at 10, ¶ 44.
Plaintiffs also refer to these allegedly analogous treatments as "intermediate level
treatment" or "intermediate inpatient treatment" throughout the complaint.    *Id*. at 10-12,
¶¶ 43, 45, 53, 55–56, 58.    Thus, plaintiffs have identified medical care and alleged that
it is analogous to the residential treatment center care for which they sought benefits,
satisfying the third element.

The fourth element requires plaintiffs to allege a disparity between the benefits
for the identified analogous treatments under the Plan.    *E.W.*, 86 F.4th at 1283.    This
element reflects the Parity Act's prohibition of "limitations on benefits for mental health
or substance-use disorder treatment that are 'more restrictive than the predominant
treatment limitations applied to substantially all medical and surgical benefits covered by

15

the plan.'"  *Id*. at 1284 (quoting 29 U.S.C. § 1185a(a)(3)(A)(ii)).   It also covers the Parity Act's prohibition on plans "imposing 'separate treatment limitations' on benefits for mental health or substance-use disorder treatment that do not apply to benefits for medical or surgical care."  *Id*. (quoting 29 U.S.C. § 1185a(a)(3)(A)(ii)).   Because the Parity Act implicates both plan terms and plan operations, a "plaintiff may challenge treatment limitations either facially or as applied."  *Id*. (citing 29 C.F.R. § 2590.712(c)(4)(i)).   To bring a facial challenge, a "plaintiff must identify an express limitation on benefits for mental health or substance use disorder treatment and demonstrate a disparity compared to benefits for the relevant medical or surgical analogue."  *Id*. (citing *Jeff N. v. United HealthCare Ins. Co.,* 2019 WL 4736920, at *3 (D. Utah Sept. 27, 2019)).   For an as applied challenge, a "plaintiff must plausibly allege that a 'defendant differentially applies a facially neutral plan term.'"  *Id*. (quoting *Jeff N.,* 2019 WL 4736920, at *3-*4).   Plaintiffs challenge the Plan "as written or in operation," thereby purporting to bring both a facial and an as applied challenge. Docket No. 1 at 13, ¶ 60.

Plaintiffs do not compare the 24-hour onsite nursing requirement with the limitations on their identified medical analogue.   Instead, plaintiffs compare the medical and mental health benefits under the Plan to alleged generally accepted standards of care for medical and mental healthcare.  *Id*. at 11, ¶ 51.

Plaintiffs allege that BlueCross uses the "generally accepted standards of medical practice" to determine whether to pay for medical and surgical treatments.  *Id*. at 10, ¶ 45.   Plaintiffs accept that "24/7 onsite nursing care is often part of generally accepted standards of care for intermediate level inpatient medical and surgical

16

treatment." *Id*. at 11-12, ¶ 55.   Plaintiffs also acknowledge that skilled nursing facilities, identified as an analogous medical treatment, provide 24-hour onsite nursing. *Id*. at 12, ¶ 59 ("Plaintiffs do not dispute that all (or nearly all) skilled nursing facilities provide 24-hour onsite nursing.").   There is nothing in plaintiffs' allegations asserting that the Plan covers, or BlueCross would apply the terms of the Plan to provide a benefit for, intermediate level medical treatment without 24-hour onsite nursing. Rather, the opposite is true.   Taken together, plaintiffs' allegations indicate that the Plan does not provide a benefit for intermediate level medical treatment in the absence of 24-hour onsite nursing services.

Plaintiffs allege that mental health benefits are not always paid where the treatment meets the standard of care.   *Id*. at 10, ¶ 46.   Specific to plaintiffs' circumstances, they allege that:

> [BlueCross] evaluated B.J.'s mental health claims using facility eligibility criteria that deviate from generally accepted standards of medical practice. This process resulted in a disparity because the Plan denied coverage for mental health benefits when the analogous levels of medical or surgical benefits would have been paid.

*Id*.   Plaintiffs allege that 24-hour onsite nursing "does not fall within generally accepted standards of care" for mental health residential treatment facilities and "is neither expected nor required" for such care.   *Id*. at 11-12, ¶ 55.   Thus, plaintiffs allege that the 24-hour nursing requirement is the specific facility eligibility criteria that deviates from the generally accepted standards of care for residential treatment facilities.   *Id*. Plaintiffs assert that BlueCross violated the Parity Act by imposing "requirements which are stricter than those dictated by generally accepted standards of care" for mental health treatment when BlueCross does not impose such stricter requirements on

medical and surgical care.   *Id*. at 11, ¶ 52.

Even when taken as true and viewed in a light most favorable to plaintiffs, these allegations do not satisfy the fourth element.   Plaintiffs have not presented a facial challenge because they have not alleged a disparity in benefits relative to the identified Plan provision, namely, the 24-hour onsite nursing requirement.   *See E.W.*, 86 F.4th at 1284.   Nothing in plaintiffs' allegations indicates that the Plan provides a benefit for intermediate inpatient medical care in the absence of 24-hour nursing.   Plaintiffs identify three types of such care: skilled nursing facilities, inpatient hospice care, and rehabilitation facilities.   Docket No. 1 at 10, ¶ 44.   For skilled nursing facilities, plaintiffs indicate that such facilities have 24-hour nursing services.   *Id*. at 12-13, ¶ 59.   Thus, no benefit is available for this care in the absence of 24-hour nursing services.   Other than their acknowledgement that 24-hour nursing services are "often part of generally accepted standards of care" for intermediate inpatient care, plaintiffs make no other allegations regarding inpatient hospice care or rehabilitation facilities.   *Id*. at 11-12, ¶ 55.   There is nothing in the complaint asserting that benefits are available for analogous medical care in the absence of the 24-hour onsite nursing services required at residential treatment facilities.

Likewise, plaintiffs have not presented a viable as-applied challenge.   *See E.W.*, 86 F.4th at 1284.   Plaintiffs do not allege that the 24-hour nursing treatment limitation is applied differently to medical and mental health treatment.   Rather, plaintiffs' allegations only indicate that the 24-hour nursing requirement is applied to benefits related to residential treatment facilities.   The Plan definitions for skilled nursing facilities and hospice make no mention of 24-hour onsite nursing services.   Docket No.

18

1 at 4, ¶ 16.   To the extent that 24-hour onsite nursing services are required for the medical analogues, it is a result not of the Plan's terms, but of state licensure requirements and Medicare or Medicaid eligibility.   *Id.* (requiring state licensure or Medicare or Medicaid eligibility); *see also J.W.*, 2022 WL 2905657, at *5 (finding that Utah law and Medicare required 24-hour nursing care for skilled nursing facilities).

Plaintiffs' arguments that they have stated a claim are not persuasive in these circumstances.   While plaintiffs are correct that they need not prove their claims at the motion to dismiss stage, their allegations must nonetheless plausibly support a legally viable claim.   *Iqbal*, 556 U.S. at 678.   Plaintiffs do not "plausibly allege a disparity between the treatment limitation on mental health or substance-use disorder benefits as compared to the limitations that defendants would apply to the medical or surgical analog."   *E.W.*, 86 F.4th at 1283.   Rather, plaintiffs' allegations indicate that the same treatment limitation effectively applies to the mental health and medical benefits identified as analogous, namely, a requirement of 24-hour onsite nursing services. Plaintiffs' attempt to attack the use of the same or a comparable standard by reference to a separate standard is inconsistent with the Tenth Circuit test and the underlying regulations.   *Id.*; 29 C.F.R. § 2590.712(c)(4)(i) (comparing "a nonquantitative treatment limitation" for "mental health or substance use disorder benefits" with "the limitation with respect to medical/surgical benefits in the classification").   Other courts in this circuit have found that such allegations do not state a claim under the Parity Act.   *J.W.*, 2022 WL 2905657, at *2; *M.P. v. BlueCross BlueShield of Illinois*, 2023 WL 8481410, at *3 (D. Utah Dec. 7, 2023).

Because plaintiffs have failed to state a claim under the Parity Act on which relief

can be granted, the Court will also dismiss plaintiffs' second claim.

### C.  Determination of Remedy

BlueCross requests that plaintiffs' claims be dismissed with prejudice.   Docket No. 19 at 15.   Plaintiffs respond that, if the motion is granted, "the proper course of action is to dismiss them without prejudice and allow Plaintiffs to amend the Complaint." Docket No. 24 at 14.

Plaintiffs argue that they should be granted leave to amend, but they have not filed a motion to amend, *see Calderon v. Kan. Dep't of Social and Rehabilitation Servs.*, 181 F.3d 1180, 1186 (10th Cir. 1999) ("We have recognized the importance of Fed. R. Civ. P. 7(b) and have held that normally a court need not grant leave to amend when a party fails to file a formal motion."), or submitted their proposed amended complaint. *See Cohen v. Busch*, 2010 WL 2593937, at *14 (D. Colo. May 10, 2010) ("The court may also deny a motion to amend a complaint for failure to submit the proposed amendment.").   The deficiencies in the complaint do not require that plaintiffs' claims be dismissed with prejudice.   Although they often overlap, "denial of leave to amend and dismissal with prejudice are two separate concepts."   *See Brereton v. Bountiful City Corp.*, 434 F.3d 1213, 1219 (10th Cir. 2006).   Here, the Court cannot determine on the present record that plaintiffs would be unable to state any viable claim for relief. Therefore, the Court will dismiss plaintiffs' claims without prejudice.

## IV.  CONCLUSION

For the foregoing reasons, it is

**ORDERED** that Defendant Blue Cross and Blue Shield of Texas's Motion To Dismiss [Docket No. 19] is **GRANTED in part** and **DENIED in part**.   It is further

**ORDERED** that plaintiffs' claims are **DISMISSED without prejudice**.   It is further

**ORDERED** that plaintiffs may file an amended complaint, on or before **April 24, 2024**, that complies with D.C.COLO.LCivR 15.1(a).

DATED March 25, 2024

BY THE COURT:

PHILIP A. BRIMMER
Chief United States District Judge